IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-02509-REB-CBS

KAISER-HILL COMPANY, L.L.C., for the use and benefit of
DIVERSIFIED TECHNOLOGIES SERVICES, INC.,

    Plaintiff,

v.

MACTEC, INC. and
THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

    Defendants.

## MEMORANDUM ORDER REGARDING PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME IN WHICH TO DESIGNATE EXPERT WITNESSES

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Use Plaintiff Diversified Technologies Services, Inc.'s ("DTS") Motion for Enlargement of Time in Which to Designate Expert Witnesses (Document # 27), filed on December 30, 2005. Defendants MACTEC and Insurance Company of the State of Pennsylvania filed a Brief in Opposition on January 13, 2006. By Order of Reference dated December 8, 2004, this matter was referred to the Magistrate Judge to, *inter alia*, "issue such orders necessary for compliance with the scheduling order, including amendments or modifications of the scheduling order upon a showing of good cause," and to "hear and determine pretrial matters, including discovery and other non-dispositive motions."

This court heard arguments on the pending motion during a hearing on January 30, 2006.

1

After carefully considering the parties' papers and the arguments of counsel, the court granted Plaintiff's Motion for Enlargement of Time and allowed DTS's belated expert designations. The court also extended deadlines for completing expert discovery. However, I granted Plaintiff's motion contingent upon the payment of sanctions based upon Plaintiff's failure to comply with pre-existing discovery deadlines. This Memorandum Order will further memorialize and explain my reasoning for those sanctions.

## FACTUAL BACKGROUND

The Complaint filed by Diversified Technologies Services on December 6, 2004, asserts claims for equitable adjustment for equipment damage, breach of contract, failure to promptly pay invoices, and breach of contract against surety The Insurance Company of the State of Pennsylvania. This action stems from subcontract work performed by DTS in the course of the environmental remediation at the Rocky Flats Environmental Technology Site. Defendant MACTEC was awarded a contract by Kaiser-Hill, which was the Management and Integration Contractor for the United States Department of Energy. In August 2002, DTS entered into a subcontract with MACTEC under which Plaintiff was to design, fabricate, set up and make operational a liquid radiation waste processing system capable of recycling wastewater and processing reverse osmosis concentrates that were being processed by another subcontractor. The instant action arises from that subcontract and remediation project.

This court held a Fed.R.Civ.P. 16 scheduling conference on March 10, 2005 and entered a Scheduling Order on March 14, 2005. Under that Scheduling Order, the parties were to complete all discovery by February 28, 2006. The Scheduling Order also required the parties to designate affirmative expert witnesses on or before October 17, 2005, and to designate rebuttal experts on

or before December 19, 2005.  The Scheduling Order submitted by the parties expressly acknowledged that "this scheduling order may be altered or amended only upon a showing of good cause."  Trial is set to commence in this case on August 28, 2006.

On December 30, 2005, DTS filed the instant Motion for Enlargement of Time in Which to Designate Expert Witnesses.  Plaintiff advised the court that on December 19, 2005, it had provided Defendants with Fed.R.Civ.P. 26(a)(2)(B) disclosures for Michael D. Palmer, "an expert in regulatory requirements and effective control measures for asbestos containing materials," and Leslie A. Cole, "an expert in health physics issues."  In short, Plaintiff requested (eleven days after the fact and more than two months after the original designation deadline), that the deadline for designating affirmative experts be extended to December 19, 2005.  Defendants MACTEC and the Insurance Company of the State of Pennsylvania opposed Plaintiff's request, arguing that DTS had not demonstrated good cause for its belated expert designations and that Plaintiff's untimely designations would jeopardize Defendants' right to an expeditious trial.[1]  Defendants have moved to strike Plaintiff's untimely designations.

## ANALYSIS

As a threshold matter, the court must acknowledge Plaintiff's failure to move in a timely manner for an extension of its expert disclosure deadline.  I am at a complete loss to understand why Plaintiff neglected to request an extension prior to October 17, 2005, the original deadline

---

[1]Defendants also challenge the previously undisclosed designation of Robert W. Lewis.  Plaintiff reasons that Mr. Lewis' December 19, 2005 designation as a "rebuttal" expert is not untimely under the parties' Scheduling Order.  To the extent that Defendants dispute Plaintiff's characterization of Mr. Lewis as a rebuttal expert, that issue is more appropriately addressed in the context of a final pretrial order or through a motion *in limine* prior to trial.  For purposes of this Memorandum Order, the court will accept Plaintiff's characterization and finds that Mr. Lewis's disclosure complied with the Scheduling Order.

for designating affirmative experts. Plaintiff claims that the opinions of Mr. Palmer and Ms. Cole "address key issues in Plaintiff's case and are considered by DTS to be essential to its case." *See* Plaintiff's Motion for Enlargement of Time, at 3. I would have expected DTS to be more attentive to deadlines that directly impact such "essential" witnesses. Plaintiff's motion also alludes to its "diligence in seeking production of" documents germane to these expert opinions. The record before the court belies this characterization.

The parties to this action held a Fed.R.Civ.P. 26(f) conference on February 17, 2005, and could have initiated formal discovery immediately thereafter. *See* Fed.R.Civ.P. 26(d). Plaintiff had approximately seven months to conduct fact discovery before its affirmative expert disclosures were due on October 17, 2006. Yet, by counsel's own admission, DTS did not seek pertinent documents from MACTEC until August 12, 2005. Anticipating that MACTEC's records might be incomplete, on August 15, 2005, Plaintiff served a subpoena *duces tecum* on Kaiser-Hill, Defendant's prime contractor. DTS served a second subpoena *duces tecum* on Kaiser-Hill on September 19, 2005. Plaintiff's counsel indicated during the January 30th hearing that he was still reviewing documents produced by Kaiser-Hill well after the October 17, 2005 expert disclosure deadline. A reasonable interpretation of the factual record leads to the conclusion that Plaintiff failed to diligently pursue discovery in anticipation of the expert disclosure deadline, and certainly failed to seek relief in a timely manner once it became obvious that the October 17th deadline could not be met. To contrary, it appears that Plaintiff chose to simply present Defendants and the court with a *fait accompli* by serving expert reports well after the judicially-established deadline.

Rule 6 of the Federal Rules of Civil Procedure provides that when an act is required by

order of court, an enlargement of time may be granted "upon motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect." *See* Fed.R.Civ.P.6(b).[2] The Tenth Circuit has held that a finding of excusable neglect under Rule 6(b) requires both a demonstration of good faith by the party seeking the enlargement and a finding that there was a reasonable basis for not complying within the specified period. *See In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1290-91 (10th Cir. 1974) (finding no error in enlarging time under Rule 6(b) in the absence of any showing of bad faith or prejudice).

> The Supreme Court has recently elaborated on the meaning of "excusable neglect," in the context of the courts' discretionary powers to excuse certain failures. "Congress plainly contemplated that the courts *would be permitted*, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388 (1993) (emphasis supplied). To determine whether the neglect is "excusable," the court must take account of all relevant circumstances surrounding the party's omission, including "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. Control over the circumstances of the delay is "the most important single . . . factor . . . in determining whether neglect is excusable." *City of Chanute v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994).

*Stringfellow v. Brown*, 1997 WL 8856 (10th Cir. Jan. 10, 1997) (finding that counsel's busy workload would not establish excusable neglect where counsel did not even move for an extension of time). In determining whether a party has demonstrated excusable neglect, a court should consider whether the moving party's tardiness results from a failure to provide for a readily foreseeable consequence or event. *See Mettle v. First Union National Bank*, 279 F. Supp.2d 598,

---

[2] Perhaps not surprisingly, Plaintiff's Motion for Enlargement of Time conspicuously fails to acknowledge the requirements of Rule 6(b).

604 (D. N.J. 2003). *Cf. Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir. 1984) (finding no excusable neglect where counsel failed to request additional time as soon as it became apparent the necessary affidavits could not be obtained within the prescribed period).

Under the circumstances presented in this case, I conclude that DTS has not sustained its burden to demonstrate that the failure to file a timely motion for extension of time was the result of excusable neglect under Rule 6(b). However, Rule 6(b) does not specifically authorize the imposition of sanctions where the "excusable neglect" standard is not satisfied. The court also recognizes that total inflexibility in applying scheduling deadlines is undesirable where the practical effect would be to exclude evidence. *See Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 604 (10th Cir. 1997) (finding reversible error where the trial court refused to amend the parties' scheduling order to allow the untimely designation of an expert witness). In this case, I conclude that striking Plaintiff's untimely expert designations would impose an extreme sanction that is unwarranted, particularly given the fact that trial in this case is not set to commence until August 28, 2006.

Nevertheless, the court remains firmly convinced that some sanction is justified. As several courts have acknowledged, "a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995). *Cf. Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed"); *Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting that a "scheduling

order is an important tool necessary for the orderly preparation of a case for trial").

A trial court is vested with considerable discretion to fashion appropriate sanctions where a party fails to comply with a scheduling order entered by that court. *See, e.g., Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 (1st Cir. 1993); *Lindsey v. United States*, 693 F. Supp. 1012, 1025 (W.D. Okl. 1988). Rule 16 permits the court, on its own initiative, to impose any sanction that is just where a party or a party's counsel fails to obey a scheduling order. Fed.R.Civ.P. 16(f). *See also Mallinckrodt, Inc. v. Masimo Corp.*, 254 F. Supp.2d 1140, 1156 (C.D. Cal. 2003) (consistent with the court's considerable discretion, the remedies listed in Rule 16(f) are neither mandatory nor exhaustive). The court also "shall" award the reasonable expenses incurred because of any noncompliance with Rule 16, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust. *Id*.

There are a number of factors that the court may consider in imposing sanctions under Rule 16(f):

> (1) the explanation for the failure to obey the order; (2) the importance of the expert opinion; (3) the prejudice to the opposing party by allowing the disclosures; and (4) the availability of alternative or lesser sanctions. Additional relevant factors include: (1) the interest in expeditious resolution of litigation; (2) a court's need to manage its docket; and (3) public policy favoring disposition of cases on the merits.

*Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 311 (M.D. N.C. 2002) (internal citations omitted).[3]

The Tenth Circuit has noted that Rule 16(f) sanctions are intended to insure compliance

---

[3] As the court is not imposing dismissal or any other dispositive sanction, the factors set forth in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 918 (10th Cir. 1992) are inapplicable.

with reasonable management requirements for case preparation and to compensate opposing parties for inconvenience and expense incurred because of noncompliance with reasonable case management orders. *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996). In this case, I find no substantial justification for Plaintiff's failure to move for an extension of disclosure deadlines in a timely manner. It appears that the exigent circumstances cited in DTS' motion were largely self-inflicted and the result of Plaintiff's failure to expeditiously employ the formal discovery tools available after February 17, 2005. Plaintiff was on notice, well before October 17, 2005, that additional time would be needed to complete its review of pertinent MACTEC and Kaiser-Hill documents. Nevertheless, DTS made no effort to advise the court or Defendants that additional affirmative experts would be disclosed. *Cf. Perkasie Industries Corp. v. Advance Transformer, Inc.*, 143 F.R.D. 73, 76-77 (E.D. Pa. 1992) ("[a] party is not permitted to postpone identification of is own witnesses and the substance of their testimony until a critical point in the proceedings at which it will become extremely burdensome for his opponent to prepare effectively to meet them").

I also find unpersuasive Plaintiff's explanation for its failure to meet the October 17th deadline. The Scheduling Order provided DTS with more than sufficient time to obtain necessary records. Plaintiff's dilatory action is all the more remarkable given the importance which DST places on the opinions of Palmer and Cole. Significant monetary sanctions are appropriate in light of the manner in which Plaintiff chose to raise the issue of expert disclosure deadlines. Having allowed the October 17th deadline to pass, Plaintiff served its belated expert disclosures on December 19, 2005 and then waited nearly two weeks to seek an extension of time. DTS now has the audacity to suggest "there has been no bad faith or willfulness that has caused the need for

8

the enlargement of time." *See* Plaintiff's Motion for Enlargement of Time, at 7. It is difficult to reconcile that statement with the undisputed factual record and Plaintiff's obvious effort to "slide under the radar." It is difficult to interpret Plaintiff's actions as anything but an attempt to circumvent the case management objectives underlying Rule 16.

## CONCLUSION

By extending the deadlines for expert disclosures, allowing the depositions of Mr. Palmer and Ms. Cole, and allowing MACTEC to designate rebuttal experts, Defendants can be placed in the position they would have enjoyed if Plaintiff had complied with the October 17, 2005 deadline. However, recognizing the additional costs that inevitably result from inefficient discovery, I will require, as an appropriate sanction for Plaintiff's failure to comply with the Scheduling Order, that DTS pay the reasonable fees and costs for one attorney representing the Defendants to participate in the Palmer-Cole depositions, up to a maximum of $2,500 per deposition. I will further relieve Defendants of their obligation under Fed.R.Civ.P. 26(b)(4)(C) to pay a reasonable fee for the time expended by Mr. Palmer and Ms. Cole in responding to discovery. *Cf. Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, 666-67 (10th Cir. 1991) (as sanctions for failing to comply with a Rule 16 discovery deadline, allowed defendant to take depositions at plaintiffs' expense); *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. at 312 (where plaintiff failed to comply with expert disclosure deadlines established under Rule 16, required plaintiff to pay the costs and expenses associated with the deposition of the disclosed expert). The court concludes that no other sanction is appropriate or necessary to achieve the objectives underlying Rule 16.

DATED this 1st day of February, 2006.

                              BY THE COURT:

                              *s/Craig B. Shaffer*
                              Craig B. Shaffer
                              United States Magistrate Judge